**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


REGINALD BLOUNT and      )
NATHAN RILEY      )
     )
     Plaintiffs,      )      Civil Action No. 10-697
     )
     v.      )      Judge Fischer
     )      Magistrate Judge Bissoon
LOUIS FOLINO, *et al.,*      )
     )
     Defendants.      )


## <u>MEMORANDUM OPINION</u>

For the reasons that follow, Defendants' motion to dismiss (Docket No. 84) will be granted in part and denied in part. Additionally, Plaintiffs' claims concerning the sanitary conditions of the food trays provided to inmates in the RHU will be dismissed with prejudice, *sua sponte*, under the provisions of 28 U.S.C. § 1915. Furthermore, Plaintiff Riley's claims arising from his administrative confinement will be dismissed as frivolous, and his allegations concerning the adequacy of his diet while in the RHU will be stricken from the amended complaint.


## I.    <u>Relevant Factual and Procedural History</u>

Reginald Blount ("Blount") currently is an inmate incarcerated at the State Correctional Institution at Somerset, Pennsylvania ("SCI-Somerset"). Nathan Riley ("Riley") currently is an inmate incarcerated at the State Correctional Institution at Greene, Pennsylvania ("SCI-Greene"). Plaintiffs bring this cause of action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*, alleging violations of their rights under the First, Eighth and Fourteenth Amendments to the

Constitution of the United States by a host of Defendants. Am. Compl. (Docket No. 76 at 1 – 3).

Plaintiffs also seek relief under Article I, § 26 of the Pennsylvania Constitution, as well as

Pennsylvania state law. Id. at 3. This suit commenced on May 20, 2010, when this Court

received Blount's motion to proceed *in forma pauperis* ("IFP").[1] (Docket No. 1). Blount was

granted leave to proceed IFP on May 21, 2010 (Docket No. 3). Riley was granted leave to

proceed IFP on June 1, 2010. The initial complaint was received on June 8, 2010. (Docket No.

10).

Plaintiffs moved for leave to file an amended complaint on September 24, 2010, in order

to add claims regarding the allegedly unsanitary conditions of the food trays provided to inmates

in the RHU. (Docket No. 53). Plaintiffs were granted leave to do so by text order on

October 1, 2010. Plaintiffs filed an amended complaint on December 13, 2010, containing these

new claims, as well as additional claims that they were not granted leave to add. (Docket No.

76). On that same day, Plaintiffs also filed a motion for class certification (Docket No. 75).

Defendants have moved to dismiss the amended complaint (Docket No. 84). Plaintiffs have

responded thereto. (Docket Nos. 92 – 93, 95). This issue is ripe for disposition.


A. Blount's Administrative Confinement

Blount alleges that, on December 4, 2008, he was transferred to SCI-Greene, and

immediately placed in the Restricted Housing Unit ("RHU"). (Docket No. 76 ¶¶ 3 – 4). Blount

was given a so-called "other report" on that date, which indicated that he was in danger from

some person or persons at SCI-Greene, and could not be protected by measures other than

---

[1] This motion was signed by Blount, and dated May 17, 2010. (Docket No. 1 at 1).

placement in administrative segregation.  Id. ¶¶ 6 – 7.  Blount alleges that this report was typed

prior to his arrival at SCI-Greene, and "was prepared absent any input or interview from [him]"

concerning the issue.  Id. ¶ 7.

Blount was brought before members of the prison's Program Review Committee

("PRC") on or about December 9, 2008.  The PRC panel refused to provide any further

explanation as to who posed a danger to Blount, or why this individual or individuals were a

danger to him.  Id. ¶ 9.  Blount alleges that he was afforded an opportunity at that time to relay

his concerns about the vagueness of the charges in the other report, as well as the fact that he was

not shown any evidence of danger.  Id. ¶ 10.  However, Blount's hearing ended without further

clarification.  Id.  Blount alleges that this review by the PRC panel was perfunctory, and violated

his right to due process.  Id. ¶¶ 11 – 12.  Blount appealed the decision to place him in the RHU to

Defendant Folino, but the panel's decision was affirmed.  Id. ¶ 13.

Blount alleges that he received similar PRC panel reviews of his confinement to the RHU

roughly every 90 days.  Id. ¶¶ 15.  These panels provided him with very brief "ambiguous and

undefinitive [*sic*] written rationale[s]" for his continued administrative confinement.  Id. ¶ 16.

He was not allowed "to bring to or present the PRC with any written version or to call any

witnesse(s) [*sic*] to rebut any contention for the continued RHU placement."[2]  Id. ¶ 18.  He also

alleges that these hearings were not stenographically recorded, and a complete record of these

proceedings is unavailable.  Id. ¶ 18.  Blount does not allege that he was unable to contest his

administrative confinement verbally at these hearings.

_____

[2] The docket indicates that Blount was transferred to SCI-Somerset on September 9, 2010.
(Docket No. 50).  It is unclear whether he is being held in administrative confinement at that
institution.

Blount avers that, as a consequence of his administrative custody, he has been unable to participate in programs or employment necessary to lower his security level or to receive promotional transfers. Id. ¶ 20. He also avers, without elaboration, that his administrative confinement is a punishment for unnamed past infractions "for which the sanction has already been fulfilled." Id. ¶ 20. He alleges that Defendant Beard has full knowledge of the PRC's actions. Id. ¶ 23.

Next, Blount alleges that Defendants Turets, Lindley, Workman, and Walker, as part of his unit management team, violated his due process rights by recommending that he remain in the RHU without providing him notice, or an opportunity to object to the recommendation. Id. ¶ 24. Finally, he asserts, generally, that his administrative confinement is the result of retaliation on the part of the Defendants for his filing of unnamed grievances and complaints against them. Id. ¶ 25. Blount claims that the above acts or omissions violated his rights under the Due Process Clause to the Fourteenth Amendment, as well as Article I, § 26 of the Pennsylvania Constitution, 37 Pa.Code § 93.11(b),[3] and 2 Pa.C.S.A § 504. Id. ¶¶ 81 – 87, 89. Plaintiff also alleges that his placement in the RHU was a retaliatory action in violation of the First Amendment. Id. ¶ 88.

B. Blount's Property

Next, Blount claims that Defendant Graves deliberately broke off the handle of Blount's footlocker on the date that he was transferred to SCI-Greene. Id. ¶ 29. Blount avers that he grieved this incident; however, his grievance was denied at the initial level, and the denial was

---

[3] This Court notes that, while Plaintiffs cite to subsection (b) numerous times throughout the amended complaint, they do not once refer to subsection (a), which explicitly states that an inmate "does not have a right to be housed . . . in a particular area within a facility."

affirmed on appeal by Defendants Folino and Varner.  Id. ¶¶ 31 – 33.  Blount alleges that these

acts or omission were violations of his right to due process under the Fourteenth Amendment,

and constituted the state tort of "negligent [*sic*]."  Id. ¶¶ 90 – 92.


### C.  Unsanitary Food Trays

Blount alleges, without elaboration, that Defendant Graves filed a false misconduct report

against him in retaliation for inquiring why he allegedly broke Blount's footlocker.  Id. ¶ 34.

Blount claims that this allegedly retaliatory act violated his rights under the First Amendment.

Id. ¶ 93.


### D.  Unsanitary Food Trays

Finally, Blount alleges that his meals in the RHU have been served on unsanitary trays.

These trays "are contaminated with food leftover from the previous meal, ink and magic marker

writing on the tray lids and food serving sections where the food is placed, and soap residue."

Id. ¶ 35.  Blount generally alleges that this creates a risk to inmates' health, but notably does not

indicate that he has suffered any ill effects from eating off of the allegedly unsanitary trays.  Id.

¶¶ 36 – 37.  Plaintiff grieved this issue to Defendant Dittsworth, asking that Styrofoam inserts be

provided inside the trays.  Id. ¶¶ 37 – 38.  Defendant Dittsworth denied the grievance at the

initial level.  Id. ¶ 38.  Blount appealed to Defendant Folino, who affirmed, and again to

Defendant Varner.  Id. ¶¶ 39 – 40.  Defendant Williams answered in Defendant Varner's place,

and denied the appeal.  Id. ¶ 41.

Riley makes similar assertions regarding the sanitary conditions of the food trays.  Id.

¶ 75.  However, his allegations include assertions that he has experienced "food poisoning type

symptoms of stomach pain, cramps, and diarrhea." Id. Curiously, he alleges that he also received Fiber-Lax tablets for diarrhea. Id. Riley alleges that Defendants DeCarlo and Dittsworth were aware of these conditions but have done nothing to rectify them, and generally asserts liability against Defendants Rogers, Folino, and Varner as well. Id. ¶¶ 77, 79.

Plaintiffs claim that these alleged acts or omissions violated their rights under the Eighth Amendment, as well as 37 Pa. Code § 95.230(2) and (5).[4] Id. p 94 – 96.

E. Riley's Administrative Confinement

Riley makes allegations regarding his administrative confinement that are similar to those made by Blount. Riley alleges that he arrived at SCI-Greene on May 15, 2007, was immediately placed in the RHU, and issued a pre-typed other report indicating that some person or persons at the institution posed a danger to him and he could not be protected through alternate means. Id. ¶¶ 45 – 50. On May 17, 2007, he appeared at a short hearing before a PRC panel, who continued his administrative confinement over Riley's objections. Id. ¶¶ 52 – 53. Riley appealed this decision to Defendant Folino and then to Defendant Mark, who both affirmed the panel's decision. Id. ¶¶ 54 – 55. Riley avers that he appeared at periodic reviews before PRC panels approximately once every 90 days, and contested his detention in the RHU. Id. ¶ 57, 59, 62. He characterizes these reviews as "perfunctory" and characterizes the written rationales for his continued administrative confinement as inadequate to satisfy his right to due process. Id. ¶¶ 57 – 58. He also alleges that Defendants Cristini, Nickolas, Cowan, Grainey, Workman, and Walker, as members of his unit management team, further denied his due process rights by

---

[4] 37 Pa. Code § 95.230 sets the minimum standards for food service at county jails in Pennsylvania. It is noteworthy that SCI-Greene is not a county jail.

recommending Riley's continued administrative segregation without providing notice and opportunity to object. Id. ¶ 64. Finally, Riley asserts that his continued confinement in administrative segregation is a result of Defendants' retaliation against him for filing lawsuits and various, unnamed grievances against officials within the Department of Corrections ("DOC"). Id. ¶ 65.

F.  Riley's Inadequate Diet in the RHU

Riley alleges, as part of his December 13, 2010, amendments to the complaint, that he has been served a nutritionally inadequate diet during his confinement to the RHU. Id. ¶ 66. Specifically, he complains that he has been given one-half to two-thirds the number of calories mandated for inmates by the DOC, and, as a result, has lost approximately 30 pounds. Id. ¶¶ 66 – 67. Riley states that, as a result, he has experienced "constant hunger, weakness, fatigue, and physically drain [*sic*]." Id. ¶ 70. He alleges that his allegedly inadequate diet is a result of a long-standing practice among food service staff members to reduce the amount of food that is given to inmates housed in the RHU, which he calls "shaking the spoon." Id. ¶¶ 69 – 70. Riley asserts that Defendant DeCarlo knew about this practice, but did nothing to stop it. Id. ¶ 71. He also alleges, generally and without elaboration, that Defendants Folino and Varner failed to rectify the alleged deficiency in his diet. Id. ¶ 73. Riley further asserts that Defendant DeCarlo's acts or omissions with respect to this issue were negligent, and violated state law. Id. ¶ 74.

Riley claims that the above alleged acts or omissions constitute violations of the Eighth Amendment's prohibition of cruel and unusual punishment, as well as 37 Pa. Code § 95.230(1). Id. ¶¶ 99 – 100.

## II. **Standard of Review**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Under this standard, a court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. See Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). However, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). Nor must a court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Additionally, a court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This is not to say that "heightened fact pleading of specifics . . ." is required. Id. at 570. However, "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The Supreme Court has made it clear that the requirement that pleadings must be facially plausible, as expressed in Twombly, applies to all civil suits in the federal courts. See Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009).

When ruling on a 12(b)(6) motion, a court may take into consideration information in addition to the complaint, such as "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff makes such a request – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote

<u>Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007).

## III.  <u>Analysis</u>

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), (*overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986)).

A.  <u>Blount's Administrative Confinement</u>

1.  <u>Fourteenth Amendment Analysis</u>

In order to state a claim of a violation of procedural due process under the Due Process Clause of the Fourteenth Amendment, Plaintiff must first set out facts which demonstrate that he had a protected liberty interest that was impaired by the Defendants' actions.  <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983) (*overruled in part on other grounds by* <u>Sandin v. Conner</u>, 515 U.S. 472 (1995)); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972).  Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  <u>Morrissey</u>, 408 U.S. at 481.

First, with respect to Blount's initial placement in administrative segregation, his claim of a violation of the Fourteenth Amendment's Due Process Clause must fail.  It is well established that inmates have no liberty interest in his initial placement in administrative confinement.  <u>See Griffin v. Vaughn</u>, 112 F.3d 703, 705 (3d Cir. 1997) (holding that up to fifteen months of

administrative confinement does not implicate a liberty interest).  Additionally, even if Blount

were able to establish that he had a liberty interest in his initial placement in administrative

segregation, his factual allegations indicate that he received all of the process that was due under

the Fourteenth Amendment.

Once the deprivation of a liberty interest has been established, an inmate's claims of a

due process violation with respect to his administrative confinement must be analyzed under the

Supreme Court's holding in Hewitt.  See also Stevenson v. Carroll, 495 F.3d 62, 70 (3d Cir.

2007) (recognizing that the standard under Hewitt , and not that of Wolff v. McDonnell, 418

U.S. 539 (1974), which applies to prison disciplinary hearings, is the proper one to apply in

addressing the sufficiency of procedural due process in cases involving an inmate's confinement

to administrative segregation).  In Hewitt, the United States Supreme Court held that an

"informal, nonadversary evidentiary review" is sufficient to safeguard the liberty interest of an

inmate being placed in administrative custody.  459 U.S. at 476.  Additionally, this review is

constitutionally sufficient so long as it ensures that an inmate receives

> some notice of the charges against him and an opportunity to
> present his views to the prison official charged with deciding
> whether to transfer him to administrative segregation. Ordinarily a
> written statement by the inmate will accomplish this purpose,
> although prison administrators may find it more useful to permit
> oral presentations in cases where they believe a written statement
> would be ineffective. So long as this occurs, and the decisionmaker
> reviews the charges and then-available evidence against the
> prisoner, the Due Process Clause is satisfied.

Id.  Such a review need not take place prior to the inmate's transfer to administrative custody,

but merely within a reasonable amount of time afterward.  Griffin, 112 F.3d at 707.

From Blount's factual allegations, it is clear that he possessed "some notice" of the charges against him no later than December 4, 2008 – the date on which he was provided the so-called "other report" informing him that some person or persons at SCI-Greene posed a danger to him, and that he could not be protected by other means. See (Docket No. 76 ¶ 5). Furthermore, it is clear from the factual allegations in the amended complaint that Blount had an opportunity to present his views on these charges on December 9, 2008, when he appeared before a PRC panel. Consequently, Plaintiff's claims of a due process violation with respect to his initial placement in administrative segregation in 2008 – to the extent that a liberty interest existed at the time of his placement – will be dismissed. Furthermore, as it is apparent that any leave to amend this claim would be futile, dismissal will be with prejudice.

This determination, however, does not address the issue of whether Blount's continued administrative confinement comports with due process. It is well established that the Due Process Clause of the Fourteenth Amendment does not, in and of itself, "create an inherent liberty interest to remain free from administrative segregation." Fortson v. Kelchner, (No. 08-532), 2009 WL 693247, at * 4 (W.D.Pa. Mar. 13, 2009) (Lenihan, Mag.J.) (internal citations omitted). Thus, Blount must show that he possesses some constitutionally-protected liberty interest in remaining free of administrative confinement that arises from a state law or regulation. Id. The determination of whether such an interest so arises is based on whether the deprivation suffered by the prisoner creates an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin, 515 U.S. at 483)

Blount alleges that his administrative confinement began on December 4, 2008. It is unclear whether Blount's administrative confinement continued when he was transferred to SCI-Somerset on September 9, 2010. The duration of Blount's confinement to the RHU – which

lasted at least six months longer than the fifteen months endured by the plaintiff in <u>Griffin</u> – may be enough, at least for the purposes of a adjudicating a motion to dismiss, to implicate the existence of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 483; <u>but</u> <u>see</u> <u>Young v. Beard</u>, 227 F.App'x 138 (3d. Cir. 2007) (holding that 930 days of disciplinary confinement in the RHU did not implicate a liberty interest under <u>Sandin</u>). However, it is not necessary for the Court to decide this issue, as Blount's factual allegations indicate that he has received all of the process he is due.

Blount concedes he received, as described above, periodic hearings that would appear to be sufficient to satisfy due process. However, he argues that these periodic reviews, although numerous, were merely perfunctory – and thus not constitutionally adequate. In support of this assertion, Blount notes that: (1) he has never been told why or from whom his life is in danger, (Docket No. 76 ¶¶ 14 – 15); (2) the hearings are not recorded, in violation of Pennsylvania law, <u>id.</u> ¶ 19; and (3) he was not allowed to present any witnesses or a "written version" at the hearings.[5] <u>Id.</u> ¶ 18.

The Supreme Court has recognized that administrative segregation must not be used as a pretext to indefinite confinement. <u>Hewitt</u>, 459 U.S. at 477 n.9. To that end, periodic reviews of a prisoner's administrative confinement are required. <u>Id.</u> Due process does not require that these reviews allow for the submission of additional evidence or statements. Instead,

---

[5] This Court notes that, in Plaintiffs' brief supporting their initial complaint, Riley alleged the PRC review forms came with the date of the next review pre-printed on them, and argued that this supported the conclusion that the outcomes of these hearings were predetermined. (Docket No. 13 at 10 – 11). This argument appears to be directed solely toward Riley's periodic reviews, as the brief explicitly references only Riley's review forms. Blount makes no such allegations or arguments.

> [t]he decision whether a prisoner remains a security risk will be
> based on facts relating to a particular prisoner-which will have
> been ascertained when determining to confine the inmate to
> administrative segregation-and on the officials' general knowledge
> of prison conditions and tensions, which are singularly unsuited for
> "proof" in any highly structured manner. . . . [T]he ongoing task of
> operating the institution will require the prison officials to consider
> a wide range of administrative considerations. . . .

Id.

While this standard is extremely deferential to the decisions made by prison staff, the

Court of Appeals for the Third Circuit has indicated that periodic reviews of administrative

confinement are not meaningful, and thus are constitutionally deficient, if they are merely

"perfunctory" in nature. See Shoats v. Horn, 213 F.3d 140, 146 (3d Cir. 2000) (citing Sourbeer

v. Robinson, 791 F.2d 1094, 1101 (3d Cir. 1986)).

Blount's allegations that the periodic reviews of his administrative confinement that he

received from various PRC committees were perfunctory are bald and conclusory. He does not

provide any allegations of facts that, if true, would allow a reasonable trier of fact to determine

that the outcome of his hearings was predetermined. As a consequence, Blount has failed to

nudge over the line of stating a plausible claim upon which relief may be granted. See

Twombly, 550 U.S. at 570. Accordingly, his due process claims stemming from his continued

administrative confinement will be dismissed. However, as it is not clear that it would be futile

to do so, leave to amend will be granted.

Additionally, Blount complains that the evidence and notices related to his confinement

to the RHU failed to meet certain standards set forth in various DOC guidelines or state law.

However, such allegations do not raise claims of constitutional significance, and thus are not

cognizable under section 1983. "'In a suit under § 1983 the plaintiff must show a violation of

the Constitution or laws of the United States, not just a violation of state law. The two are not the same.'" Brown v. Dep't of Corrs., No. 05-347, 2007 WL 4322980 at *6 (W.D.Pa. Aug. 29, 2007) (Hay, Mag.J) (adopted by Brown v. Beard, No. 2:05cv347, 2007 WL 3274145, at *1 (W.D.Pa. Nov. 5, 2007) (Cercone, J.)) (quoting Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir. 1986)). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations").

Finally, Blount alleges that members of his unit management team violated his due process rights by making periodic recommendations that Blount's administrative confinement be continued without giving him notice or an opportunity to object. Blount's own factual allegations establish that he was given periodic hearings before the PRC roughly every 90 days, and that he was allowed to present verbal arguments there. This is all that due process requires. As it would be futile to grant leave to amend, Blount's claims against his unit management team will be dismissed with prejudice.[6]

2. First Amendment Retaliation

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d

---

[6] Riley makes similar claims against Defendants that were part of his unit management team. They are deficient for the same reasons and, to the extent that they are not repetitive of his claims in Riley v. Beard, No. 08-1675 (W.D.Pa. filed Dec. 10, 2008), they will be dismissed, with prejudice, for the same reasons.

Cir. 2000) (internal quotes and citation omitted); <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003).  In order to succeed on a claim of retaliation, a prisoner must demonstrate:

> 1)  the conduct in which he was engaged was constitutionally protected;
>
> 2)  he suffered "adverse action" at the hands of prison officials; and
>
> 3)  his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

<u>Carter v. McGrady</u>, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001)).  To show an "adverse action," a plaintiff must demonstrate that a defendant's acts were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  <u>Allah v. Al-Hafeez</u>, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (quoting <u>Allah v. Seiverling</u>, 229 F.3d at 225).

If a plaintiff proves the above elements, the burden shifts to the state actor to prove that it would have taken the same action even without the unconstitutional factors.  <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977).  In the prison context, the state actor may rebut a plaintiff's claim by showing that his actions were motivated by legitimate penological objectives.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995).

Assuming, *arguendo*, that Blount has managed to allege facts that, if true, could satisfy the first two elements of the above test, the amended complaint is utterly devoid of allegations that could support the third.  Indeed, the only connection that he draws between his administrative confinement and any protected activity is the bald assertion that he was placed in the RHU because of filing some unnamed grievance and complaints against unnamed DOC officials.  This is merely a recitation of the elements of the legal claim of retaliation without

supporting facts and, as such, it is wholly inadequate to support the inference that his (as yet unnamed) constitutionally protected conduct was a substantial or motivating factor in the decisions to place him in the RHU.  Consequently, Blount's allegations are insufficient to "nudge[] [his] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  Accordingly, this claim will be dismissed.  However, as it is not entirely certain that it would be futile to do so, leave to amend this claim will be granted.


B.  Blount's Property

Blount's claim that Defendants destroyed or damaged items of his personal property arises under the Due Process Clause of the Fourteenth Amendment, but such a claim necessarily fails "if a meaningful post-deprivation remedy is available for the loss."  Hudson v. Farmer, 468 U.S. 517, 533 (1984).  In this respect, the Court of Appeals for the Third Circuit has held that the Pennsylvania Department of Corrections's grievance procedure (which Blount admits he pursued, although unsuccessfully) "provides an adequate post-deprivation remedy" for prisoners making claims for damage to or loss of personal property.  Durham v. Dept. of Corrs., 173 F.App'x 154, 157 (3d Cir. 2006).  Therefore, Blount's allegation that Defendants destroyed or damaged items of his personal property is insufficient to state a claim on which relief may be granted, and will be dismissed.  Additionally, as it appears that he cannot prevail on this claim, dismissal will be with prejudice.


C.  Fabricated Misconduct

Blount alleges that Defendant Graves issued a false misconduct report against him in retaliation for his inquiry into the cause of the alleged damage to his footlocker on

December 4, 2008. This claim must be analyzed under the First Amendment retaliation standard recited in Part III.A.2 of this memorandum opinion, *supra*.

In response to Blount's allegations of retaliation, Defendants provided a copy of the report, as well the associated hearing report. (Docket No. 84-1 at 2 – 4). These documents show that Blount pleaded guilty to two of the three infractions with which he was charged on the date in question.

The Court of Appeals for the Third Circuit has determined that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp., 998 F.2d at 1196 (internal citations omitted); see also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court") (internal citations omitted). See also id. (holding that the court may consider documents "whose contents are alleged in the complaint and whose authenticity no party questions"). It is proper for a court to consider such documents if they are "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. Additionally, even if the document is not explicitly referenced or cited in the complaint, it may be considered without converting a motion to dismiss into a motion for summary judgment if "the claims in the complaint are 'based' on [it]. . . ." Id. (citing In re Trump Casino Sec. Litig. – Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)). "[C]onsidering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the

document will be considered." <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 (3d Cir 2004) (*abrogated in part on other grounds by* <u>Twombly</u>, 550 U.S. 544).

These documents submitted in support of Defendants' motion to dismiss are either explicitly or implicitly referenced in the amended complaint. (Docket No. 76 ¶ 34). Additionally, they are central to Blount's claims of retaliation against Defendant Graves. Furthermore, while Blount generally objects to their inclusion based on his belief that it will improperly convert the instant motion to dismiss into a motion for summary judgment, it is notable that he does not contest their authenticity. <u>See</u> (Docket No. 92 at 1). As such, it is appropriate to include the above documents in this Court's analysis of this claim.

Given the content of these reports – and that fact that they show that he admitted guilt to two of the three misconducts with which he was charged – it is apparent that Blount never could show that his constitutionally-protected activity was the motivating factor behind Defendant Graves's issuance of the misconduct report. Even if that were not the case, it is clear that Defendants would have issued the misconducts regardless of any retaliatory intent. As such, Blount's claim of retaliation based on the misconduct report in question will be dismissed with prejudice.

To the extent that Blount attempts to raise a stand-alone claim of a violation of his constitutional rights based on this misconduct, his claim will be dismissed with prejudice. A false misconduct charge does not itself qualify as an Eighth Amendment violation. <u>Booth v. Pence</u>, 354 F.Supp.2d 553, 559 (E.D.Pa. 2005). Further, no due process claim is stated when a prisoner alleges that misconduct charges were fabricated. <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 – 54 (3d Cir. 2002) (due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports).

Indeed, all that is required of a misconduct proceeding is that the inmate be afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Id. at 653 – 54. Here, Blount makes no allegation that he was not provided with a hearing at which he could have denied Defendant Graves's report. Further, the requirements of due process are satisfied if some evidence supports the decision to sanction a prisoner. Sup't v. Hill, 472 U.S. 445, 455 (1985). Blount's misconduct report and hearing report indicate that he pleaded guilty to two of the misconducts with which he was charged. (Docket No. 84-1 at 4). Hence, there certainly was "some" evidence supporting the conclusion that he committed the infractions in question.

    D.  <u>Unsanitary Food Trays</u>

    Because Plaintiffs proceed IFP, it is necessary for this Court, pursuant to 28 U.S.C. § 1915, to examine, *sua sponte*, Plaintiffs' claims for legal sufficiency. Specifically, section 1915 (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, a complaint that lacks arguable merit in fact or law. <u>Stackhouse v. Crocker</u>, 266 F.App'x. 189, 190 (3d Cir. 2008) (citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> <u>Tourscher v. McCullough</u>, 184 F.3d 236, 240 (3d Cir. 1999); <u>see</u> <u>also</u> <u>Banks v. Mozingo</u>, No. 08-004, 2009 WL 497572, at *6 (W.D.Pa. Feb. 26, 2009) (Cercone, J.).

The Eighth Amendment mandates that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In order to state an Eighth Amendment conditions of confinement claim, a plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the defendants had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). While a plaintiff "need not await a tragic event" before seeking relief, he must at the very least show that a condition of confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. Id. at 33, 35.

Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, such conditions nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise. . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Id. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider

the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Id. The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Id. at 838.

Addressing the objective prong, case law exists indicating that the service of food on unsanitary trays does not present an unreasonable risk of harm. Shirley v. Sternal, 2010 WL 6020684, at *7 (S.D.Fla. Aug. 30, 2010) (food trays might have sometimes appeared to be dirty or unsanitary does not constitute cruel and unusual punishment.) See also Blaxton v. Boca Grande Foods, No 4:08cv350, 2008 WL 4888852, at *2 (N.D.Fla. Nov.12, 2008) (complaint that food is room temperature or cold, sometimes spoiled, and food trays and utensils are not always properly washed does not amount to cruel and unusual punishment). However, even assuming,

*arguedo*, that Plaintiffs were able, somehow, to meet this part of the test, they still are unable to show deliberate indifference.

In support of their amended complaint, Blount submitted a copy of the grievance that was addressed, at the initial level, by Defendant Dittsworth regarding this issue. (Docket No. 76-1 at 1). Riley similarly submitted his grievance and response from Defendant Rogers regarding this issue in his motion to amend the complaint. (Docket Nos. 55-2 – 55-3). Dittsworth's response to Blount's grievance indicates that (1) he was unable to find the problems of which Blount complained in the course of his investigation; and (2) if there was a problem with the sanitation of Plaintiffs' trays, they have the option to notify a corrections officer immediately to rectify the situation. (Docket No. 76-2 at 1). Rogers's response indicated that he was taking proactive measures to remove unsanitary trays. (Docket No. 55-3). Neither response supports the conclusion that Defendants possessed the requisite culpability to satisfy the deliberate indifference standard.

Furthermore, Plaintiffs' allegations in the amended complaint regarding Defendants Rogers, DeCarlo, and Dittsworth's personal involvement in the sanitation of Plaintiffs' trays are conclusory. Plaintiffs do not present allegations of actual facts that, if true, would show these Defendants' personal involvement in any unsanitary conditions of their trays. Indeed, it appears that Plaintiffs name Dittsworth and Rogers solely because they responded to grievances, which is inadequate to establish the requisite amount of personal involvement in an alleged constitutional violation to form a cause of action under section 1983. See Part III.G., *infra*. Accordingly, these

claims will be dismissed. As it is clear that leave to amend would be futile, dismissal will be with prejudice.[7]


E. Riley's Administrative Confinement

"Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." McWilliams v. Colorado, 121 F.3d 573, 574 (10th Cir. 1997) (quotation marks and alteration omitted). Riley's allegations are nearly identical to those he made in another pending lawsuit.[8] See Am. Compl. (Docket No. 40), Riley v. Beard, No. 08-1675 (W.D.Pa. filed Dec. 10, 2008). As such, these claims in the instant lawsuit will be dismissed, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Additionally, as leave to amend would be futile under these circumstances, dismissal will be with prejudice.[9]

It is noted that Riley's claims against Defendant Grainey, Workman, Walker, Lindley, and Macknair were dismissed without prejudice from that prior litigation because Riley had

_____

[7] Based on the above analysis, Defendants' argument that the claims related to the sanitation of Plaintiffs' food trays should be stricken from the complaint (Docket No. 85 at 28), will be denied as moot.

[8] This Court takes judicial notice of the allegations that Riley has made in Riley v. Beard, No. 08-1675 (W.D.Pa. filed Dec. 10, 2008). Even when adjudicating a motion to dismiss for failure to state a claim, courts are permitted to take judicial notice of matters of public record, prior judicial opinions, and official court records. See, e.g., McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009); Carlev v. Wheeled Coach, 991 F.2d 1117, 1126 (3d Cir. 1993) (citing Gov't of Virgin Islands v. Testamark, 528 F.2d 742, 743 (3d Cir. 1976)).

[9] As Defendants properly note in their brief supporting dismissal, for the purposes of the instant civil action, Riley's claims accruing prior to May 6, 2008, are also untimely. (Docket No. 84 at 4). It is well established that the statute of limitations of any section 1983 claim is the forum state's statute of limitations for personal injury suits. Mumma v. High Spec, Inc., 400 F.App'x 629, 631 (3d Cir. Nov. 5, 2010) (citing Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (*overruled on other grounds*)). The applicable statute of limitations in Pennsylvania is two years. 42 Pa.C.S.A § 5524.

failed to comply with an order of this Court requiring that he provide documents necessary for service of process on them, and not due to the sufficiency of Riley's factual allegations against them. See Order (Docket No. 64), Beard, No. 08-1675. Indeed, claims based on the same or similar facts alleged against other defendants to that suit, for whom Riley had provided service documents, survived a motion to dismiss. Instead of providing service documents, Riley filed a notice of appeal from their dismissal. (Docket No. 66), Beard, No. 08-1675. This appeal currently is pending before the United States Court of Appeals for the Third Circuit. See Riley v. Sec. PA Dep't of Corr., No. 11-2127 (3d Cir. filed Apr. 25, 2011).

It is clear from this appeal that litigation regarding the above five Defendants is ongoing, and claims against them have existed in two contemporaneous lawsuits since this Court received a copy of the instant complaint on June 8, 2010.[10] (Docket No. 10). Furthermore, it clearly was Riley's choice, as inexplicable as it may be, to file and maintain two lawsuits, based on the same facts, against the same Defendants. Consequently, the claims raised against Defendants Grainey, Workman, Walker, Lindley, and Macknair are repetitious, and therefore frivolous. They will be dismissed without prejudice to his continued prosecution of these claims in Riley v. Beard, No. 08-1675.

F.  Riley's Inadequate Diet in the RHU

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend his pleadings once as a matter of course with 21 days of service. Fed.R.Civ.P. 15(a)(1)(A). After that period

---

[10] The certificate on Riley's amended complaint in Beard indicates that it was placed in the prison mail system at SCI-Greene on May 7, 2010 – one day after the date that he signed his initial complaint in the instant civil action, and more than a month prior to the date that it was received by this Court. (Docket No. 37-1 at 82), Beard, No. 08-1675.

of time, a party must seek leave from the Court to amend. Fed.R.Civ.P. 15(a)(2). The docket indicates that Defendants waived formal service of the initial complaint on August 27, 2010. See, (Docket No. 19 – 48). The certificate on Blount's initial motion for leave to amend indicates that it was placed in the prison mail system by Blount on September 21, 2010 – 25 days after the initial complaint was served. (Docket No. 53). Riley filed his motion for leave to amend on October 13, 2010. (Docket No. 55). Both Plaintiffs included proposed "supplemental" complaints in their motions, in which they sought to add the above claims regarding allegedly unsanitary food conditions. See (Docket Nos. 53-1 and 55-1). Neither Blount nor Riley made allegations of receiving a nutritionally inadequate diet while in the RHU in those documents.

Plaintiffs were granted leave to file an amended complaint incorporating their proposed claims on November 24, 2010. (Docket No. 67).

Riley did not seek leave to add the nutritional adequacy claim, in violation of Rule 15 of the Federal Rules of Civil Procedure. Furthermore, this claim arises out of facts that are unrelated to those that were alleged in the initial complaint or the proposed amendments. As a result, this claim will be stricken from the amended complaint. The undersigned notes that Plaintiff has raised an identical claim in Riley v. DeCarlo, No. 11-537 (W.D.Pa. filed Apr. 26, 2011). Additionally, during the course of a hearing held in that case, which addressed the very issue of the nutritional sufficiency of Riley's diet, it was revealed that Riley was released from the RHU on December 17, 2010. As of that date he has taken his meals with the general prison population, and has access to the prison commissary, where he may (and does) purchase additional food. (Docket No. 10 at 3 – 4), DeCarlo, No. 11-537.

G.  Respondeat Superior

It is well established that no liability exists under section 1983 solely by means of vicarious liability or *respondeat superior*.  Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).  Instead, in order for § 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'"  Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

In cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may exist.  See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).  At a minimum, such liability attaches "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'"  Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).

The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  See e.g. Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D.Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective

actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause). Plaintiffs' allegations against Defendants Folino, Varner, Mark, Perez, Williams, and Rogers are all based on their supervisory roles or on their involvement in the grievance process. Plaintiffs have failed to allege any personal involvement on their parts and, consequently, have failed to state claims against them. Additionally, Plaintiffs' claims against Defendants Dittsworth and DeCarlo appear to be, at least in part, based on the same theory of supervisory liability. Accordingly, these claims will be dismissed. As it would be futile to grant leave to amend, dismissal will be with prejudice.

     H.  <u>Plaintiffs' Official Capacity Claims</u>

     To the extent that Plaintiffs sue Defendants in their official capacities for damages, their claims are barred by the Eleventh Amendment. When an individual Commonwealth employee is sued in his or her official capacity, the action is considered to be against the Commonwealth itself. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). A lawsuit for damages against the Commonwealth of Pennsylvania would be barred by the Eleventh Amendment. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-341 (1979). The immunities available to the individual Defendants sued in their official capacities are the same as those possessed by the Commonwealth and, accordingly, Plaintiff's "official capacity" section 1983 claims are barred and will be dismissed. <u>Graham</u>, 473 U.S. at 167.

I.  State Law Claims

The doctrine of sovereign immunity bars claims for damages against the Commonwealth, its officials, and employees acting within the scope of their duties.[11]  1 Pa.C.S.A. § 2310.  There are nine instances in which sovereign immunity has been waived by statute.  These are negligent acts pertaining to: (1) vehicle liability; (2) medical professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  42 Pa.C.S.A. § 8522(b)(1)-(9).  These nine exceptions must be "strictly construed and narrowly interpreted."  Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Cmwlth. 2003).  "Commonwealth employee[s][are] protected by sovereign immunity from the imposition of liability for intentional tort claims." La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

In the case at bar, it is not disputed that Defendants' alleged bad acts were performed within the scope of their duties as employees of the Commonwealth.  Indeed, it is apparent from the factual allegations in the complaint that Defendants were acting within the scope of their employment as prison officials when they committed their alleged wrongful acts.  It also is clear that none of Plaintiffs' state tort law claims fall within the above nine exceptions.  Furthermore, it appears that no opportunity to amend would change this fact.  Accordingly, Plaintiffs' state law tort claims against Defendants will be dismissed with prejudice.

---

[11] Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is calculated, at least in part, by a purpose to serve the employer. Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), citing Restatement (Second) Agency § 228.

Plaintiffs' claims against Defendants under Article I, § 26 of the Pennsylvania Constitution is more problematic. In <u>Jones v. City of Philadelphia</u>, 890 A.2d 1188 (Pa. Cmwlth. 2006), the Pennsylvania Commonwealth Court, sitting *en banc*, declined to create a cause of action for money damages in the case of an alleged violation of Article I, § 8 of the Pennsylvania Constitution. <u>Id.</u> at 1216. While <u>Jones</u> is limited to its facts, and does not address the state constitutional provision invoked by Plaintiffs, the holding of the Commonwealth Court did indicate the Pennsylvania courts' reluctance to create a remedy under the Constitution of Pennsylvania without the benefit of legislative action. <u>Id.</u>

Neither Plaintiffs nor Defendants have identified any case in which the courts of Pennsylvania have explicitly held that a private cause of action does or does not exist under Article I, § 26 of the Pennsylvania Constitution. This Court, in conducting independent research into this legal claim, was likewise unable to locate any such precedent from the state courts of Pennsylvania.

In <u>Warren v. Township of Derry</u>, the United States District Court for the Middle District of Pennsylvania, when confronted with a plaintiff's claim for recovery under Article I, § 26 of the Pennsylvania Constitution, noted that "deference to the state appellate courts on this issue [was] appropriate" and therefore declined to exercise supplemental jurisdiction over this obviously complex and unresolved issue of Pennsylvania state law, invoking 28 U.S.C § 1367(c)(1). <u>See also</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc</u>, 140 F.3d 478, 487 (3d Cir. 1998) (affirming a federal court's refusal to extend jurisdiction over a state law issue that would require that court to interpret a state's constitution, as deferral of the matter was "out of respect for the right of a state court system to construe that state's own constitution") (citing <u>Doe v. Sundquist</u>, 106 F.3d 702, 708 (6th Cir. 1997)). Accordingly, this

Court should decline to exercise supplemental jurisdiction over this obviously complicated issue of state constitutional law. Thus, Plaintiffs' claims arising from the Pennsylvania Constitution will be dismissed for lack of subject matter jurisdiction, without prejudice to them bringing those claims in state court.

This Court notes that Blount alleges that his periodic hearings before the PRC were not recorded, and thus were invalid under Pennsylvania state law.[12] See 2 Pa.C.S.A. § 504; see also Mason v. Dep't of Corrs., 886 A.2d 724 (Pa. Cmwlth. 2005) (holding that a DOC assessment adjudication against an inmate was invalid because it was not recorded). Defendants do not adequately brief the issue of whether this state law provides some independent avenue of relief for Blount – in spite of the fact that it is clear that it does not rise to a due process violation under Sandin. Consequently, nothing in this Court's opinion should be construed to address the merits of this legal theory. However, as it is clear, for the reasons stated above, that Defendants are immune from suit for damages under state law, the only relief that Blount could receive under 2.Pa.C.S.A. § 504 would be injunctive in nature. As Blount has been transferred from SCI-Greene to SCI-Somerset, any claims for injunctive relief against the Defendants named in this suit have been rendered moot. Accordingly, Blount's claims for relief under this legal theory will be dismissed. Additionally, as is there is no doubt that leave to amend would be futile, dismissal will be with prejudice.

---

[12] Riley makes these allegations as well. However, these allegations are duplicative of allegations made in Riley v. Beard, No. 08-1675 (W.D.Pa. filed Dec. 10, 2008). Thus, they will be dismissed with respect to Riley as legally frivolous.

J.   Motion for Class Certification

A party (or parties) seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23.  Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001).  To meet this burden, Plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the subsections of Rule 23(b).  Id.

Importantly, a class action can be maintained only if the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a)(4).  In this case, neither of the Plaintiffs is able to satisfy the adequacy of representation factor because none has sufficient legal education.  See, e.g., Krebs v. Rutgers, 797 F.Supp. 1246, 1261 (D.N.J. 1992) (denying class certification to *pro se* plaintiffs without sufficient legal education).  Further, none of the imprisoned Plaintiffs could act as a "lead plaintiff" in a class action since "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates." Alexander v. New Jersey State Parole Board, 160 F.App'x 249, 250 n.1 (3d Cir. 2005) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant ... to represent his fellow inmates in a class action")).  This prohibition arises from the language of Rule 23(a)(4), and is a recognition of the fact that an inmate is both a lay person, and is also subject to being transferred to another corrections facility at any time who cannot, by definition, adequately and fairly represent other incarcerated individuals.  See Awala v. N.J. Dep't of Corr., No. 05-2362FLW, 2005 WL 2044910 (D.N.J. Aug. 23, 2005), *appeal dismissed*, 227 F.App'x 133 (3d Cir. 2007); Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); accord McNeil v. Guthrie, 945 F.2d 1163, 1164 (10th Cir. 1991) (a prisoner lacks standing to raise any claims of others regarding the class action).  Thus,

Plaintiffs may not maintain a class action, and their motion for class certification (Docket No. 75) will be denied.

To the extent that this motion is one for appointment of counsel, it will be denied for the same reasons listed in this Court's prior order (Docket No. 67), denying Plaintiffs' prior motion for counsel (Docket No. 56). It is noted that Plaintiffs' attempts to initiate a class action suit do complicate this case, thus weighing the second Tabron factor in their favor. See Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir. 1993). However, the above analysis shows that any "arguable merit" to Plaintiffs' claims, which is the underlying rationale for the appointment of counsel in a civil suit under Tabron, is nonexistent. Id. at 156.

An appropriate order follows.


June 21, 2011                                    BY THE COURT:
                                                s/Nora Barry Fischer
                                                NORA BARRY FISCHER
                                                UNITED STATES DISTRICT JUDGE



cc:
**REGINALD BLOUNT**
CF-6922
SCI Somerset
1590 Walters Mill Road
Somerset, PA 15510-0001

**NATHAN RILEY**
CT 8571
SCI Greene
175 Progress Drive
Waynesburg, PA 15370